THE STANLEY DOLLAR.*

(Circuit Court of Appeals, Ninth Circuit. February 3, 1908.)

No. 1,287.

1. ADMIRALTY—JURISDICTION—MARITIME CONTRACTS — PASSENGER CONTRACTS BINDING VESSEL.

A corporation of Washington contracted with a dock company to bring 600 Japanese laborers from Honolulu to Seattle on respondent steamship, owned by a steamship company, for which the corporation was to pay a stated sum per head for carriage. A Japanese agent of the dock company in Honolulu advertised for laborers and contracted with libelants and

*Rehearing denied June 10, 1908.

others to transport them to Seattle, collecting from them a part of the passage money agreed upon, and taking their notes for the balance. A representative of the steamship company went to Honolulu and there received from the agent a portion of the passage money, and issued tickets for carriage to Victoria, B. C., the vessel being of Canadian register and not entitled to carry passengers from there to any United States port. Libelants being unable to read the tickets, which were in English, did not know that they were not to be taken to Seattle until after they had gone on board, but on learning such fact left the vessel, and libeled her for breach of the contracts. *Held*, on evidence showing that the arrangement between the dock company and the steamship company was not a charter but a joint enterprise in the profits of which each was to share, and that the Japanese agent who made the contracts also represented the owner of the vessel, that the contracts were maritime and gave a right of action in admiralty against the ship.

[Ed. Note.—Admiralty jurisdiction as to matters of contract, see notes to The Richard Winslow, 18 C. C. A. 347; Board of Com'rs v. Howard, 27 C. C. A. 530.]

2. CARRIERS—DAMAGES—BREACH OF CONTRACT OF CARRIAGE—SUIT BY PASSENGER.

Libelants were not entitled to recover damages for loss of time after breach of the contracts and while waiting for the trial of the case.

3. ADMIRALTY—COSTS—DOCKET FEE IN CONSOLIDATED CASES.

Where libels against a vessel are similar in character and are consolidated for trial, but one docket fee is taxable for the libelants.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Admiralty, §§ 851, 853.]

Appeal from the District Court of the United States for the Territory of Hawaii.

E. C. Peters, John W. Cathcart, Nathan H. Frank, and Walter D. Mansfield, for appellants.

Charles Page, Edward J. McCutchen, Samuel Knight, and J. J. Dunne, for appellees.

Before GILBERT and ROSS, Circuit Judges.

ROSS, Circuit Judge. The case shows that a Japanese named Kikutake, in the early part of June, 1905, caused to be inserted in certain Japanese newspapers published at Honolulu and circulated in the Islands, an advertisement for laborers to go to Seattle and Tacoma, state of Washington, by a certain steamship called the "Stanley Dollar," to sail June 19th of that year direct to Seattle, stating the wages such laborers would receive, and the fare each was to pay, and further stating that if any such laborer should not be able to pay the full fare, he (Kikutake) would lend him $20 of the amount. In response to that advertisement, each of the 36 appellees, among a large number of other Japanese, contracted with Kikutake for transportation on board the Stanley Dollar from Honolulu to Seattle, at the time paying to Kikutake $20 in money on account of his passage, and executing to Kikutake his promissory note for the balance of the passage money, and receiving from Kikutake a receipt therefor. At this time the ship mentioned was in the waters of the Orient. Prior to her arrival at Honolulu, Mr. Robert Dollar arrived at that place as the representative of the steamship company owning the vessel, and for the purpose, in part, of issuing tickets to the laborers secured by Kikutake by means and

in pursuance of the advertisements. After his arrival in Honolulu Dollar and Kikutake had several conferences upon the subject, resulting in the issuance by Dollar to each of the libelants of a ticket printed entirely in English, entitling him to transportation from Honolulu to Victoria, B. C.—Dollar thereupon collecting from Kikutake $14 for each of such tickets. The steamship in question did not reach Honolulu from Yokohama until June 27, 1905, and then it was discovered that she was without a license or certificate to carry passengers. Moreover, she was of Canadian register, and was consequently not entitled to carry passengers from Honolulu to Seattle or any other American port. A survey was made at the instance of the collector of customs at Honolulu, resulting in the making of certain repairs and additions to the equipment of the ship, deemed essential to the granting of a license to her to carry passengers. The day before she was finally ready to sail, which was about midnight of July 15, 1905, the libelants went on board with their baggage, and then for the first time discovered that they were not to be taken by the ship to Seattle, in accordance with their agreement with Kikutake, but to Victoria, in accordance with the tickets which had been issued to them, which tickets they could not read, not understanding any English, and which had not been theretofore explained to them. The appellees thereupon left the ship and filed the libels which were in the court below consolidated, and which formed the basis of the appellees' recovery there.

From the record it seems that a corporation called the "Construction & Maintenance Company" had entered into an agreement with another corporation called the "Commercial Dock Company," doing business at Tacoma, for the transportation by the latter of 600 Japanese in the steerage of the steamship Stanley Dollar, from Honolulu to Victoria, for $26.50 each ($28 to Seattle), to leave Honolulu on or about June 15, 1905, and to arrive at Victoria on or about June 30th, and that Mr. Dollar, before going to Honolulu, had been directed by the Stanley Dollar Steamship Company, and authorized by the Commercial Dock Company, to collect from Kikutake, who seems to have been originally acting for the dock company, one-half of the total amount which the dock company was to receive from the Construction & Maintenance Company per passenger, to be applied on account of the money due to the steamship company under its agreement with it. The balance of the money due to the steamship company from the Commercial Dock Company, and which was to be determined by the number of passengers carried by the ship, was payable before or at the time the vessel should sail from Honolulu. It is not pretended that the Japanese laborers in question had any notice of the agreement between these corporations, and even if they had, we think it very clear from the record that their agreement was a common venture, each to share in the profits to be derived therefrom, and that in no true sense was it a charter party. It was, in effect, a common venture for the transportation of the laborers from Honolulu, to which the owner of the steamship was a party along with the other corporations mentioned; and we think from the evidence in the case that the court below was quite right in holding that Kikutake, in his dealings with the

appellees, was all the time representing the owner of the ship, as well as the other parties interested in the enterprise. United States v. Shea, 152 U. S. 178, 186, 14 Sup. Ct. 519, 38 L. Ed. 403.

It is equally clear, we think, that the temporary acceptance of the tickets by the appellees, not at the time understood by or explained to them, and which were repudiated and transportation thereunder declined as soon as their contents were discovered, did not create a new contract between the appellees and the ship, or annul or in any way change that made by them with Kikutake, which was the contract sued on, strictly maritime in character, and therefore clearly within the jurisdiction of the court below, and which contract was violated by the delivery, under the circumstances stated, by Dollar to the appellees of the tickets providing only for their transportation to Victoria, and by the inability of the vessel to transport them to Seattle.

We are of the opinion, however, that the court below erred in allowing the appellees damages for loss of time after the breach of the contract and while awaiting the trial of the case, and also in allowing a docket fee in each of the libels. Where the libels are consolidated, as in the present instance, but one docket fee can be allowed. The Mount Eden (D. C.) 87 Fed. 483.

The cause is remanded to the court below with directions to modify the decree as above indicated, and, as so modified, it will stand affirmed.